**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CAROL GRIFFITH NAVARRE,

Plaintiff,

v. Case No. 8:25-cv-2063-JRK

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

---

# OPINION AND ORDER[1]

## I. Status

Carol Griffith Navarre ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of fibromyalgia, Hashimoto's disease, chronic fatigue syndrome, hyperglycemia, and thyroid nodules. Transcript of Administrative Proceedings (Doc. No. 9; "Tr." or "administrative transcript"), filed September 26, 2025, at 80, 94, 234.[2] Plaintiff protectively filed an application for DIB on October 20,

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

[2] Some documents are duplicated in the administrative transcript. Citations are to the first time a document appears.

2020, alleging a disability onset date of February 7, 2020.[3] Tr. at 207-13. The application was denied initially, Tr. at 78, 79-92, 107, 108-10, and upon reconsideration, Tr. at 93, 94-101, 113-15, 116.

On September 16, 2022, an Administrative Law Judge ("ALJ") held a hearing,[4] during which he heard testimony from Plaintiff, who appeared with a non-attorney representative,[5] and a vocational expert ("VE"). See Tr. at 62-77. On November 17, 2022, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 10-19.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted a brief authored by her representative. See Tr. at 4-5 (Appeals Council exhibit list and order), 202-03 (request for review), 313 (brief). On June 7, 2023, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner.

On August 2, 2023, Plaintiff commenced an action under 42 U.S.C. § 405(g) by timely filing a Complaint in this Court, seeking judicial review of the Commissioner's final decision. Tr. at 691-94. On the unopposed motion of

---

[3] The DIB application summary indicates it was actually completed on October 21, 2020. See Tr. at 207. The protective filing date for the DIB application is listed elsewhere in the administrative transcript as October 20, 2020. See, e.g., Tr. at 80, 94.

[4] The hearing was held via telephone with Plaintiff's consent. See Tr. at 64, 158, 193-95, 197-98.

[5] Although the transcript of the hearing refers to the representative as "Attorney" and "counsel," Tr. at 62, 64, the appointment form indicates she is not an attorney, Tr. at 164-67; see also Tr. at 655 (ALJ's Decision indicating she is a "Non-attorney representative").

Defendant, Tr. at 685-68, the Court on September 26, 2023 entered an Order reversing and remanding the matter for further administrative proceedings. Tr. at 689-90; see Tr. at 687 (Judgment). On January 16, 2024, the Appeals Council entered an Order remanding the matter to an ALJ with instructions. Tr. at 679-82.

The ALJ held a hearing on June 24, 2024, during which he took testimony from Plaintiff, who appeared with the same representative, and a VE.[6] Tr. at 695-709. On June 28, 2024, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 655-67. Plaintiff filed written exceptions to the ALJ's Decision. Tr. at 649-50, 675, 833-35. On June 27, 2025, the Appeals Council declined to assume jurisdiction, Tr. at 646-48, making the ALJ's Decision the final decision of the Commissioner. On August 4, 2025, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), through counsel, seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues the ALJ erred by: 1) failing to properly consider her fibromyalgia; 2) failing to develop the record by obtaining a consultative examination focused on whether Plaintiff had the requisite number of tender points to establish that fibromyalgia was a severe

---

[6] The hearing was held via telephone with Plaintiff's consent. Tr. at 697, 765-66, 810-12, 827.

impairment; and 3) failing to properly consider the opinion evidence from two non-examining state-agency physicians and from Plaintiff's treating physician. Memorandum in Opposition to the Commissioner's Decision (Doc. No. 18; "Pl.'s Mem."), filed December 30, 2025, at 3-8, 8-10, 10-16. On January 23, 2026, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing Plaintiff's arguments.[7]

After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for reconsideration of the opinion evidence. On remand, this reconsideration may impact the Administration's consideration of the remaining issues on appeal. For this reason, the Court need not address the parties' arguments on those issues. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

---

[7] In violation of the Court's Local Rules, Def.'s Mem. does not include page numbers. Citations are to the pagination assigned by the Court's electronic filing system.

## II. The ALJ's Decision

When determining whether an individual is disabled,[8] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 658-66. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since February 7, 2020, the alleged onset date." Tr. at 658 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the

[8] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

following severe impairments: degenerative disc disease; Hashimoto's thyroiditis; and multinodular goiter." Tr. at 658 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 661 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

> [Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b) except [Plaintiff] cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; cannot kneel or crawl; can sit for 6 hours and can stand for 6 hours in an 8 hour workday; and can occasionally handle and finger.

Tr. at 662 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as an "administrative secretary." Tr. at 665 (some emphasis and citation omitted). The ALJ then proceeded to step five. After considering Plaintiff's age ("48 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 665 (emphasis and citations omitted), such as "Counter clerk," "Production inspector," and "Laminating machine offbearer," Tr. at 666. The ALJ concluded

Plaintiff "has not been under a disability . . . from February 7, 2020, through the date of th[e D]ecision." Tr. at 666 (emphasis and citation omitted).

## III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against

the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff argues the ALJ erred in evaluating the opinions of two non-examining, state agency physicians, Paulette Johnson, M.D. and Prianka Gerrish, M.D., regarding the "severe" nature of her fibromyalgia, and the opinion of her treating physician, Kristien Polecritti, D.O., regarding the effects of her fibromyalgia and other impairments. Pl.'s Mem. at 10-16. Responding, Defendant contends the non-examining physicians did not opine on whether Plaintiff's fibromyalgia is a severe impairment. Def.'s Mem. at 10-11. Further, Defendant contends the ALJ's reasons for finding the treating physician's opinion was not persuasive are supported by substantial evidence. Id. at 11-13.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work

activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources").

An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[9] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates [the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion or a prior administrative medical finding: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R.

[9] Plaintiff filed her application after the effective date of sections 404.1520c and 416.920c, so the undersigned applies the revised rules and Regulations.

§§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).[10]

Here, Dr. Johnson reviewed the file on May 11, 2021 and opined Plaintiff is capable of light work. Tr. at 83-89. As part of the agency's analysis, a finding was made that Plaintiff's fibromyalgia was a severe impairment. Tr. at 84-85. It is unclear whether Dr. Johnson specifically made this finding or whether it was the adjudicator at the initial denial level. See Tr. at 84-85. Regardless, Dr. Johnson specifically considered Plaintiff's "allegations of fibromyalgia" and "[t]ender points" in rendering her opinion on Plaintiff's functioning, as well as

[10] When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

a "[b]rief progress note" dated January 27, 2021 in which it was noted that "Fibromyalgia" was "severe" and "Failed multiple treatments." Tr. at 84, 89.

Similarly, Dr. Gerrish on December 6, 2021 reviewed the file at the reconsideration level and determined Plaintiff was able to perform light work. Tr. at 95-99. Again, a finding was made that fibromyalgia was a severe impairment, but it is unclear from the form whether this finding was made by Dr. Gerrish or an SSA adjudicator at the reconsideration level. See Tr. at 96-97. Regardless, Dr. Gerrish took into account Plaintiff's allegation of "fibromyalgia," as well as a "[b]rief progress note" dated January 27, 2021 in which it was noted that "Fibromyalgia" was "severe" and "Failed multiple treatments." Tr. at 96, 97.

Plaintiff's treating physician, Dr. Polecritti, authored two opinions, on August 16, 2022 and June 6, 2024, respectively. Tr. at 602-06, 948-51. If accepted, both opinions would render Plaintiff unable to perform any work. In the 2022 opinion, Dr. Polecritti wrote that she had been seeing Plaintiff three times per year since 2012 for a "multitude of symptoms" and that Plaintiff's prognosis was "poor." Tr. at 602. Particularly relevant, Dr. Polecritti opined Plaintiff meets the American College of Rheumatology criteria for fibromyalgia and her symptoms include multiple tender points, chronic fatigue, muscle weakness, premenstrual syndrome, dysmenorrhea, breathlessness, anxiety, and chronic fatigue syndrome. Tr. at 602. According to Dr. Polecritti, Plaintiff

has bilateral pain in every location she was asked about, and the pain is "almost daily" and "burning." Tr. at 602-03. In a separate "onset date questionnaire" filled out on August 16, 2022, Dr. Polecritti wrote that Plaintiff's limitations have been present since she has treated Plaintiff beginning in October 2012. Tr. at 607.

In the 2024 opinion, Dr. Polecritti wrote that Plaintiff has "chronic diffuse muscle [and] joint pain, fatigue, paresthesia of upper [and] lower extremities, depression, and [right] arm pain [and] numbness. Tr. at 948. According to Dr. Polecritti, Plaintiff has "diffuse tender points throughout musculature." Tr. at 948. In a separate "onset date questionnaire" form, Dr. Polecritti indicated that the limitations and restrictions were present since 2019. Tr. at 952.

Significantly, in the face of these opinions and the medical evidence of record, the ALJ found at step two that Plaintiff's fibromyalgia is not a severe impairment. Tr. at 659-60. In making such findings, the ALJ observed that a treating rheumatologist, Adam Grunbaum, "reported that [Plaintiff] had global tender points, but did not specify where they were located." Tr. at 659. As to Dr. Polecritti's treatment notes, the ALJ wrote that they were "handwritten and note [Plaintiff's] subjective complaints, but do not include any specific physical examination findings or show that a determination was made that disorders that could cause the symptoms or signs were excluded." Tr. at 659-60 (citations omitted). Dr. Polecritti's notes are indeed mostly hand written and are difficult

to read, but they do appear to reflect examination findings, contrary to the ALJ's observation. See, e.g., Tr. at 393-96, 434, 466-67, 587-89, 613-14, 925-28. They also reflect the "severe" nature of Plaintiff's fibromyalgia, which has "failed multiple treatments." Tr. at 395 434; see also Tr. at 587 (Dr. Polecritti noting on August 10, 2022 that Plaintiff "feels horrible, in flare, unable to function most of time").

The ALJ wrote as follows regarding the opinions at issue:

> The State agency medical consultants, Paulette Johnson, MD and Prianka Gerrish, MD, both opined that [Plaintiff] retained the ability to perform work at the light exertion level, with no postural, manipulative, or environmental limitations. The opinions of Dr. Johnson and Dr. Gerrish are partially persuasive because they are consistent with each other, they are supported by detailed written explanations that show that they are grounded on the evidence, and they are generally consistent with and supported by the evidence received at the hearing level, including the testimony of [Plaintiff]. However, the evidence received at the hearing level, including the testimony of [Plaintiff], supports the additional limitations included in the [RFC]. Conversely, the opinions of Dr. Polecritti are not persuasive because they are not consistent with or supported by the objective testing and examination findings reported by [Plaintiff's] other providers, and they are not consistent with or supported by evidence received at the hearing level. The undersigned further notes that in the first medical source statement, Dr. Polecritti opined that [Plaintiff's] disabling limitations had existed since 2012, and in the second she opined that [Plaintiff's] disabling limitations existed since 2019, but [Plaintiff's] earnings records and work history reports show that she engaged in substantial gainful activity through February 7, 2020. Thus, the

> opinions of Dr. Polecritti are not consistent with or supported by the evidence.

Tr. at 664 (citations omitted).

The ALJ's findings regarding the opinion evidence are flawed to such a degree that reversal with remand for reconsideration is required. As to the non-examining state-agency opinions of Drs. Johnson and Gerrish, they both relied in part on Plaintiff's fibromyalgia diagnosis in opining as to her work-related functioning, both noting the "severe" nature of the diagnosis and that Plaintiff had "Failed multiple treatments." Tr. at 89, 97. Yet, despite finding their opinions on functioning to be "partially persuasive," Tr. at 664, the ALJ's finding at step two regarding the non-severity of the fibromyalgia is inconsistent with these doctors' acceptance of it as a severe impairment that has failed multiple treatments, Tr. at 659-60.

Moreover, the ALJ found Dr. Polecritti's opinions were "not persuasive" because they are inconsistent with "objective testing and examination findings reported by [Plaintiff's] other providers," Tr. at 664, without specifying which or how. Conversely, earlier in the Decision, the ALJ had recognized at step two that treating rheumatologist Dr. Grunbaum noted "global tender points," although he "did not specify where they were located." Tr. at 659; see Tr. at 402, 408, 414 (Dr. Grunbaum's notes). Dr. Grunbaum ordered various laboratory work specifically in relation to the fibromyalgia diagnosis. Tr. at 410. The record

also contains other tests such as a Pituitary hormone evaluation, evidently to rule out other issues. Tr. at 420-24. Dr. Grunbaum also noted Plaintiff's joint pain that was "moderate, affecting sleep, affecting [activities of daily living], affecting leisure activities, [and] affecting occupation." Tr. at 416. The ALJ's lack of explanation in this regard frustrates judicial review because an independent review of the record does not appear to support the conclusory finding.

Further, although the ALJ's point about Dr. Polecritti assigning two different dates of onset in the opinion forms is accurate, the ALJ's finding that Plaintiff engaged in substantial gainful activity through February 7, 2020 does not take into account that Plaintiff was on regular, intermittent Family Medical Leave Act (FMLA) leave from 2014 through at least November 13, 2019. See Tr. at 535-85. Plaintiff often sought and was approved for FMLA leave over the years in relation to her fibromyalgia and chronic pain. See Tr. at 535-85.

In sum, the ALJ's findings on the opinion evidence are flawed to such a degree that the matter must be reversed and remanded for reconsideration of the opinions of Drs. Johnson, Gerrish, and Polecritti.

## V. Conclusion

In light of the foregoing, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A) Reconsider the opinions of non-examining state-agency consultants Drs. Johnson and Gerrish, and the opinion of treating physician Dr. Polecritti;

(B) If necessary, consider Plaintiff's other arguments on appeal; and

(C) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 29, 2026.

James R. Klindt
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record